UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEBRA WILLIAMS,

     Plaintiff,

v.                          Case No:   2:15-cv-312-FtM-38MRM

CAROLYN W. COLVIN
Commissioner of Social Security,

     Defendant.

_____/

## OPINION AND ORDER

    This cause is before the Court on Plaintiff Debra William's Complaint (Doc. 1) filed on

May 19, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("SSA"), denying her claim for supplemental security income.

The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr."

followed by the appropriate page number), and the parties filed legal memoranda in support of

their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED**

pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**      **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.**      **Eligibility**

    The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in

death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment

must be severe, making the claimant unable to do her previous work, or any other substantial

1

gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20

C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion

through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*,

482 U.S. 137, 146 n.5 (1987).

### B.      Procedural History

On August 9, 2011, Plaintiff filed an application for supplemental security income

asserting an onset date of July 1, 2007.  (Tr. at 96, 176).  Plaintiff's application was denied

initially on November 15, 2011, and on reconsideration on February 1, 2012.  (Tr. at 112-120,

126-131).[1]  A hearing was held before Administrative Law Judge ("ALJ") Joseph L. Brinkley on

August 15, 2013.  (Tr. at 34-83).  The ALJ issued an unfavorable decision on August 23, 2013.

(Tr. at 10-33).  The ALJ found Plaintiff not to be under a disability from August 9, 2011, through

the date of the decision.  (Tr. at 28).

On April 16, 2015, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-

5).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on May 19, 2015.

This case is ripe for review.  The parties consented to proceed before a United States Magistrate

Judge for all proceedings.  (*See* Doc. 14).

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant

has proven that she is disabled.  20 CFR 416.920(a).  An ALJ must determine whether the

claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a

severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404,

---

[1] The Court notes that there was a second reconsideration on September 10, 2012.  (Tr. at 113).
Neither the parties nor the ALJ make any mention of this second reconsideration.

Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 9, 2011, the application date. (Tr. at 15). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: hypertension; obesity; headaches (migraine); arthritis; status post-stent placement; history of cocaine abuse; history of renal artery stenosis; left ventricular hypertrophy; parotid tumor; diabetes mellitus; dysthymic disorder; depression; bereavement; and pain disorder. (Tr. at 15). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926). (Tr. at 15). At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work except that claimant:

> will require a sit/stand at will option; can occasionally engage in overhead reaching with the left upper extremity and frequently engage in overhead reaching with the right-dominant upper extremity; can occasionally climb ramps/stairs, balance, kneel, and stoop; can never crawl, crouch, or climb ladders, ropes, or scaffolds; can frequently use the upper extremities to grasp, handle, finger and feel; should avoid concentrated exposure to greater than fluorescent lighting in an office environment; should avoid greater than office environment noise levels; should avoid concentrated exposure to humidity, extreme hot or cold temperatures, and workplace hazards including unprotected heights, dangerous machinery, and uneven terrain; is limited to simple routine, repetitive tasks; and to work that does not require high-volume production quotas and/or fast-paced assembly line jobs.

(Tr. at 17).  The ALJ determined that Plaintiff is able to perform her past relevant work as a

cashier.  (Tr. at 26).  After considering Plaintiff's age, education, work experience, and residual

functional capacity, the ALJ alternatively determined that there are also other jobs that exist in

significant numbers in the national economy that Plaintiff can perform, specifically an elemental

hand worker, DOT # 715.685-026, sedentary exertional level, SVP 2; and toll or ticket taker,

DOT # 211.462-038, sedentary exertional level, SVP 2.  (Tr. at 27).[2]  The ALJ concluded that

Plaintiff was not under a disability since August 9, 2011, the date of the application.  (Tr. at 28).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the

correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether

the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390

(1971).  The Commissioner's findings of fact are conclusive if supported by substantial

evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; *i.e.*, the evidence

must do more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the conclusion.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

Where the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that "the evidence preponderates against" the Commissioner's

decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932

F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560;

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

*see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.    Analysis

On appeal, Plaintiff raises four issues.  As stated by Plaintiff, they are:

(1) The ALJ committed reversible error in failing to find that Williams' impairments meet and/or equal Listing 3.02.

(2) The RFC finding by the ALJ is not supported by substantial evidence.

(3) The vocational expert's testimony is not consistent with the DOT and, as a result, the ALJ's conclusions regarding Williams' ability to perform work are not supported by substantial evidence.

(4) The ALJ improperly assessed Williams' noncompliance and, therefore, found Williams to be not credible.

(Doc. 17 at 1).  The Court will address each issue in turn.

### A.  Listing

Plaintiff argues that the ALJ erred in failing to find that she met the criteria for Listing 3.02(A) and, thus, the ALJ erred in failing to find that she was disabled.  Specifically, Plaintiff points to her $FEV_1$ test results to support her argument that she met Listing 3.02(A)'s requirements.  Plaintiff also argues that the ALJ failed to provide sufficient analysis on this issue to facilitate meaningful judicial review.  The Commissioner responds that Plaintiff failed to sustain her burden of showing that she met the requirements of Listing 3.02(A).

At step three, to meet the requirements of a Listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing."  20 C.F.R. § 404.1525(d).  The Listings of Impairments in the Social Security Regulations identify impairments that are considered severe enough to prevent a person from engaging in gainful activity.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If a plaintiff can meet a listed impairment or

otherwise establish an equivalence, then a plaintiff is presumptively determined to be disabled, and the ALJ's sequential evaluation of a claim ends. *Edwards v. Heckler*, 736 F.2d 625, 626 (11th Cir. 1984). The burden is on Plaintiff to show that she meets the Listings. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet a Listing, a plaintiff must have a diagnosis included in the Listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 1525(a)-(d)). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id.* (citing 20 C.F.R. § 404.1526(a)).

In this case, Plaintiff claims that she meets Listing 3.02(A). The introduction to Listing 3.00, provides:

> [t]he listings in this section describe impairments resulting from respiratory disorders based on symptoms, physical signs, laboratory test abnormalities, and response to a regimen of treatment prescribed by a treating source. Respiratory disorders along with any associated impairment(s) must be established by medical evidence. Evidence must be provided in sufficient detail to permit an independent reviewer to evaluate the severity of the impairment.

20 C.F.R. § Pt. 404, Subpt. P. App. 1, § 3.00. Listing 3.02(A) sets forth the requirements for chronic obstructive pulmonary disease. 20 C.F.R. § Pt. 404, Subpt. P. App. 1, § 3.02(A). Specifically, Listing 3.02(A) requires a plaintiff to provide evidence of "chronic obstructive pulmonary disease due to any cause, with the $FEV_1$ equal to or less than the values specified in table I corresponding to the person's height without shoes." *Id*.

6

In order to meet Listing 3.02(A)'s requirements, Plaintiff must provide:  (1) a diagnosis of chronic obstructive pulmonary disease; and (2) an $FEV_1$ equal to a value in the chart.  *See id.* and *Wilson*, 284 F.3d at 1224.  Plaintiff failed to show that any medical professional diagnosed her with chronic obstructive pulmonary disease.  Thus, Plaintiff failed to satisfy the first criteria of Listing 302(A).

Second, even though Plaintiff's $FEV_1$ numbers appear to satisfy Listing 3.02(A)'s requirement, Plaintiff's $FEV_1$ test does not meet all the requirements of the Listing.  *See* 20 C.F.R. pt. 404 Subpt. P, App. 1 § 3.00.  Specifically, the "spirogram is satisfactory for measurement of the FVC if *maximal expiratory effort* continues for at least 6 seconds."  *See* 20 C.F.R. pt. 404 Subpt. P, App. 1 § 3.00E (emphasis added).  Thus, the test requires *maximal* effort.  Here, Plaintiff's examiner noted Plaintiff only exhibited *moderate* effort.  *Id.*; (Tr. at 261).  Therefore, Plaintiff failed to show that her $FEV_1$ test met Listing 3.02(A)'s requirements.

Plaintiff also argues that the ALJ's brief consideration of the Listings does not include the requisite analysis sufficient for judicial review.  The ALJ specifically considered whether Plaintiff's condition met or medically equaled a listed impairment and specifically mentioned Listing 3.02. (Tr. at 15).  The ALJ found that Plaintiff's impairments, when considered singly or in combination, did not meet or equal the severity requirements of any listed impairment nor did the medical records provide the required elements to meet or medically equal a listing.  (Tr. at 15).  "An ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record."  *Bellew v. Comm'r of Soc. Sec.*, 605 F. App'x 917, 920 (11th Cir. 2015) (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir 1986)).  Additionally, an ALJ is not required to recite mechanically the evidence leading to the final determination as to whether a plaintiff met a Listing.  *Id.*  In this case, while the ALJ did not

7

specifically state the reasons for finding Plaintiff did not meet Listing 3.02 at step three, he did

state that the medical records do not provide the required evidence to show that Plaintiff met or

medically equaled a Listing. (Tr. at 15). This statement is supported by substantial evidence of

record. Further, Plaintiff failed to meet her burden of showing that her impairments met or

medically equaled Listing 3.02(A). The Court finds that the ALJ did not err in finding that

Plaintiff's condition did not meet or medically equal a Listing.

### B. RFC finding

Plaintiff argues that the mental limitations in the RFC are not supported by substantial

evidence and should be more limiting. The Commissioner responds that the ALJ properly

weighed the medical evidence concerning Plaintiff's mental impairments and properly

determined Plaintiff's RFC.

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's

RFC and, based on that determination, decide whether the plaintiff is able to return to his or her

previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination

of a claimant's RFC is within the authority of the ALJ and – along with the claimant's age

education, and work experience – the RFC is considered in determining whether the claimant can

work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff

is able to do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In

determining whether Plaintiff can return to her past relevant work, the ALJ must determine the

Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v.

Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004); 20 C.F.R. § 404.1520(e). An ALJ must

consider all of a claimant's mental impairments that are sufficiently severe in combination with

all of a claimant's impairments. *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1256 (M.D. Fla. 2005).

Here, in the RFC, the ALJ found that Plaintiff was limited to sedentary work with the additional mental limitations of being "limited to simple, routine, repetitive tasks, and to work that does not require high-volume production quotas and/or fast-paced assembly line jobs." (Tr. at 17). The ALJ supported this finding by considering the following mental examinations.

Beginning in 2009, the ALJ considered Plaintiff's diagnoses of anxiety, but also noted that Plaintiff's mental examination was virtually unremarkable. (Tr. at 22). The ALJ also reviewed Claudia Zsigmond, Psy.D.'s assessment of March 2, 2009. (Tr. at 23, 253-55). Dr. Zsigmond's examination showed Plaintiff:  appeared alert and well-oriented; had no suicidal or homicidal tendencies; had good recall of recent and remote events; had no severe short term or long term memory impairments; had speech and thought processes that were logical and coherent; and had somewhat blunted affect, but appeared in no acute mental distress.  (Tr. at 23). The ALJ found that Dr. Zsigmond diagnosed Plaintiff with dysthymic disorder, a fair prognosis with appropriate services, and a global assessment of functions ("GAF") score of 57, denoting only moderate symptoms.  (Tr. at 23).  The ALJ afforded Dr. Zsigmond's medical opinion great weight, finding her opinion to be consistent with the examination findings and "not [to be] inconsistent" with the RFC finding.  (Tr. at 23).

The ALJ considered Cheryl Kasprzak, Psy.D.'s assessment of March 17, 2010.  (Tr. at 23, 268-71).  Specifically, the ALJ considered Dr. Kasprzak's findings that Plaintiff was: cooperative; only mildly depressed in mood with a sad and labile affect; in the borderline range for intellectual abilities; poor in memory; mixed in immediate memory; adequate in remote memory; fair in attention and concentration; adequate in judgment and insight; and not suicidal

or homicidal in ideation.  (Tr. at 23).  At this examination, the ALJ noted that Plaintiff admitted

that she had never been under formal psychotherapeutic care.  (Tr. at 23).  The ALJ considered

Dr. Kasprzak's determination of Plaintiff's GAF score of 52, finding it denoted only moderate

symptoms.  Dr. Kasprzak found Plaintiff's prognosis to be guarded as to employment.  (Tr. at

23).  The ALJ afforded Dr. Kasprzak's opinion only some weight, finding that Dr. Kasprzak's

opinion was not entirely consistent with the objective findings.  (Tr. at 23).

    The ALJ also considered the assessment of Paula Bowman, Psy.D., a consultative

examiner, under the supervision of Dr. Kasprzak, who assessed Plaintiff on November 7, 2011.

The ALJ summarized Dr. Bowman's findings that Plaintiff had a dysphoric mood and flat affect;

retarded psychomotor activity; a borderline intellectual range; a recent memory that was not

within normal limits; and a mixed immediate memory.  (Tr. at 24).  However, the ALJ contrasted

those findings with Dr. Bowman's other findings that Plaintiff was fully oriented; had a

cooperative attitude; had adequate remote memory; had moderate judgment with intellectual

insight; and had denied suicidal and homicidal ideation.  (Tr. at 24).  The ALJ noted that Dr.

Bowman found Plaintiff to have a GAF score of 46.  (Tr. at 23).  The ALJ found that this low

GAF score denoted serious symptoms such as suicidal ideation, severe obsessional rituals,

frequent shoplifting, or any serious impairment in social, occupational, or school functioning.

(Tr. at 23).  The ALJ noted that Dr. Bowman's prognosis for Plaintiff for employment was

guarded.  (Tr. at 24).

    The ALJ afforded Dr. Bowman's opinion some weight for a number of reasons.  First, the

ALJ found the GAF score to denote serious symptoms, but these serious symptoms were not

reflected in Dr. Bowman's assessment.  (Tr. at 23).  Second, the ALJ found Dr. Bowman's

findings that Plaintiff's attention and concentration were not within normal limits to conflict with

Plaintiff being able to spell the word "world" correctly backward and having only slight difficulty in counting by serial threes.  (Tr. at 24).  The ALJ emphasized that Plaintiff had no formal psychotherapeutic treatment and that GAF scores are only a snapshot representation of a person's condition at that given time on that given day.  (Tr. at 24).  The ALJ found that these GAF scores were inconsistent with Plaintiff's self-reported behavior and lack of ongoing mental health treatment over a longitudinal period of time.  (Tr. at 24).

The ALJ considered an April 2012 psychiatric evaluation by a nurse practitioner.  (Tr. at 23).  Plaintiff complained of depression, disturbed sleep, crying spells, decreased concentration, no energy, pulling out her hair, and fleeting thoughts of suicide.  (Tr. at 23).  Upon examination, Plaintiff appeared:  to have low energy; to have impaired short-term memory; to have suicidal ideation with no intent or plan; to have a depressed despairing, labile and flat mood/affect; to be polite; to be fully oriented; and to be cooperative.  (Tr. at 23).  Plaintiff was prescribed Zoloft and sought help from her church to afford it.  (Tr. at 23).  In response to this assessment, the ALJ reduced Plaintiff's RFC to simple, routine, repetitive tasks that do not require high-volume production quotas and/or fast-paced assembly line jobs.  (Tr. at 23).

The ALJ considered the evaluations of Dr. Bowman, Dr. Kasprzak, Dr. Zsigmond, and the nurse practitioner in forming Plaintiff's RFC.  These examinations do not provide specific functional limitations.  The ALJ took into account the assessments as to memory, attention, and concentration when he limited Plaintiff's RFC to simple, routine, repetitive tasks, and to work that does not require high-volume production quotas or fast-paced assembly line jobs based upon these reports.  The ALJ determined the weight afforded these opinions and explained his reasoning therefor.  Thus, the ALJ's determination as to the weight afforded these opinions is supported by substantial evidence.

Plaintiff also raised the issue that these medical professionals found Plaintiff to have low

GAF scores and argues that the ALJ did not properly consider these GAF scores.  "Although

GAF scores frequently have been cited in Social Security disability benefits determinations, the

Commissioner has declined to endorse the GAF scale for use in the Social Security and SSI

disability programs, and has indicated that GAF scores have no direct correlation to the severity

requirements of the mental disorders listings."  *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1293

(M.D. Fla. 2009) (internal quotation marks omitted) (citing *Wind v. Barnhart*, 133 F. App'x 684,

692 (11th Cir. 2005)).  This Court has also recognized that GAF scores are of "questionable

value in determining an individual's mental functional capacity."  *Wilson*, 653 F. Supp. 2d at

1293.  Given their questionable value, courts have generally declined to find reversible error

where an ALJ does not expressly discuss a claimant's GAF scores.  *See e.g*., *Bailey v. Astrue*,

No. 3:09-cv-383-JJRK, 2010 WL 3220302, at *8-9 (M.D. Fla. Aug. 13, 2010) (finding the ALJ's

failure to mention Plaintiff's GAF scores did not require remand); *Smith v. Comm'r of Soc. Sec.*,

No. 6:10-cv-1478-Orl-31 KRS, 2011 WL 6217110, at *6-7 (M.D. Fla. Nov. 1, 2011), *report and

recommendation adopted*, 2011 WL 6217124 (M.D. Fla. Dec. 14, 2011), *aff'd*, 486 F. App'x 874

(11th Cir. 2012)).

In this case, the ALJ discussed and discounted the low GAF scores as inconsistent with

serious symptoms and inconsistent with the examiners' observations.  The ALJ properly

considered the GAF scores presented by the psychologists and considered them in combination

with the psychologists' reports to find them not indicative of Plaintiff's abilities.  Thus, the

ALJ's consideration of Plaintiff's GAF scores is supported by substantial evidence.

Plaintiff also asserts that she is not capable of working on a sustained basis.  Plaintiff

contends that she is unable to work because the vocational expert testified that a person who is

off-task twenty percent or greater in an eight-hour day would be precluded from performing competitive employment.  Plaintiff claims that her past hospitalizations would account for her being absent twenty percent of the work week.  The Commissioner contends that past hospitalizations are not necessarily indicative of future hospitalizations.  Plaintiff failed to cite to any medical opinions that support her contention that she would be off-task more than twenty percent of the work day.  The Court finds this unsupported contention without merit.

The Court finds that the ALJ considered the opinions of the examining medical professionals and afforded them appropriate weight.  The Court determines that the ALJ did not err in formulating Plaintiff's RFC as to Plaintiff's mental limitations, and substantial evidence supports the ALJ's determination.

### C.  Vocational Expert Testimony

Plaintiff argues that the vocational expert's testimony was not consistent with the DOT and, as a result, the ALJ's decision is not supported by substantial evidence.  The Commissioner responds that the ALJ's inquiry into whether the vocational expert's testimony was consistent with or based on the DOT was sufficient when the vocational expert responded that his testimony was based on the DOT.

Prior to the promulgation of SSR 00-04p, in *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999), the Eleventh Circuit considered the issue of a conflict between the testimony of a vocational expert and the definitions in the DOT.  In *Jones*, the Eleventh Circuit held that when the vocational expert's testimony conflicts with the DOT, then the vocational expert's testimony "trumps" the DOT.  *Id*. at 1230.  The Court reasoned that the DOT is not comprehensive and provides occupational information on jobs in the national economy "and it instructs 'DOT users demanding specific job requirements [to] supplement th[e] data with local information detailing

13

jobs within their community.'" *Id.* (citing *Dictionary of Occupational Titles*, Special Notice at xiii (4th ed. 1991) (other citations omitted)). A method of supplementing the DOT is by obtaining the testimony of a vocational expert. *Jones*, 190 F.3d at 1230.

SSR 00-4p was enacted to clarify the standards for use of a vocational expert at a hearing and requires administrative law judges to "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the *Dictionary of Occupational Titles* (DOT)." SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

> When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

*Id.* Social Security Rulings "are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. [citation omitted]. Even though the rulings are not binding on [the court], we should nonetheless accord the rulings great respect and deference." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010). Even though SSR 00-4p was promulgated after *Jones*, the Court has not identified any cases that have overturned *Jones*.

### 1. Past Relevant Work

Plaintiff briefly raised the argument that the vocational expert's testimony that Plaintiff could perform her past relevant work as a cashier was confusing because the vocational expert indicated that this occupation was categorized as light work in the DOT, but the RFC limited

Plaintiff to sedentary work with a sit/stand option.  The Commissioner responds that Plaintiff has the burden to show that she cannot perform her past relevant work, and Plaintiff failed to meet this burden.

At the fourth step of the sequential evaluation, an ALJ must consider all of the duties of a plaintiff's past relevant work and evaluate a plaintiff's ability to perform that work in spite of her impairments.  *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x 829, 830 (11th Cir. 2013).  However, the burden lies with Plaintiff to show that she cannot return to her past relevant work.  *Id.*; *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007).

Here, the vocational expert testified that while Plaintiff's past relevant work as a cashier is listed as light work in the DOT, in his opinion, half the jobs "would be sedentary in nature."  (Tr. at 75, 77).  The ALJ found that the vocational expert's testimony indicated that Plaintiff was able to perform the job of cashier as it is performed within the DOT.  (Tr. at 26).  The ALJ elicited a reasonable explanation from the vocational expert to explain why Plaintiff would be able to perform a job listed in the DOT at a light level when Plaintiff was restricted to sedentary level jobs.  This explanation being that in the opinion of the vocational expert, half of the cashier jobs that exist are performed at a sedentary level.  The ALJ relied on the vocational expert's testimony to resolve any conflict between the DOT and the vocational expert's testimony to reach a determination that Plaintiff was able to perform her past relevant work as a cashier.  (Tr. at 26).  The ALJ compared Plaintiff's RFC with the physical and mental demands of the job of cashier and found that Plaintiff was able to perform it within the requirements of the DOT.  (Tr. at 26).  The Court finds that the ALJ did not err in finding that Plaintiff was able to return to her past relevant work as a cashier and this determination is supported by substantial evidence.

### 2.   Other Jobs

In the alternative, the ALJ proceeded to step five of the sequential evaluation and found that Plaintiff was able to perform other work in the national economy.  Plaintiff argues that the ALJ erred in relying on the testimony of the vocational expert to determine that Plaintiff was able to perform these other jobs.  Plaintiff maintains that her RFC limited her to sedentary work as well as to simple, routine, repetitive tasks that do not require high-volume production quotas and/or fast-paced assembly line jobs.  Plaintiff claims that the jobs listed by the vocational expert of bench assembler and ticket taker are both categorized as light work without a sit/stand option in the DOT with reasoning levels of 2 ("SVP"), which Plaintiff argues is above the limitation in Plaintiff's RFC for simple, routine, repetitive tasks.

The Commissioner contends that the vocational expert determined that a person with Plaintiff's limitations was capable of performing jobs such as desk worker, bench assembler, elemental hand worker, and ticket-taker.  (Tr. at 76-77).  Moreover, the Commissioner argues that during the hearing, the vocational expert did not identify the exertional levels for each of these jobs, thus, any conflict between the vocational expert's testimony and the DOT was not apparent.  The Commissioner maintains that when the vocational expert testified that his opinion was consistent with the DOT, then the ALJ could properly rely on the vocational expert's opinion.

In this case, the ALJ specifically asked the vocational expert, "[a]nd is your testimony consistent with the Dictionary of Occupational Titles or are you basing some of your testimony on some other factors?"  (Tr. at 77).  The vocational expert responded, "[no], si[r], it's all based upon the DOT."  (Tr. at 77).  Plaintiff did not offer evidence controverting the vocational expert's opinion as to exertional level or SVP level or object to that testimony during the

hearing.  *See Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (holding that when ALJ asks if there are any inconsistencies between the vocational expert's testimony and the DOT, and the vocational expert responds no, then absent an objection or plaintiff offering evidence controverting the vocational expert's testimony, the ALJ does not err in relying on the vocational expert's testimony, even if a conflict exists).[3]  Further, the vocational expert did not identify the exertional demands of the other jobs making any conflict with the DOT not apparent to the ALJ.  (Tr. 75-77).

Plaintiff asserts that the ALJ should be required to go beyond the answer by the vocational expert indicating no conflict with the DOT, and require the vocational expert to explain why his opinion varies from the listings in the DOT.  When no apparent conflict exists, neither *Jones* nor SSR 00-4P require an ALJ to go beyond asking the vocational expert if there is a conflict and, when the response is that there is no conflict, require additional investigation.  *See also Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007) (holding that "[o]ur precedent establishes that the testimony of a vocational expert "trumps" an inconsistent provision of the DOT in this Circuit"); *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 796 (11th Cir. 2011) (holding that "if there is a conflict between the DOT and the jobs identified by a VE in response to the hypothetical question, the testimony of the VE "trumps" the DOT because the DOT is not the sole source of admissible information concerning jobs" (citation omitted)).

Plaintiff cites *Akins v. Comm'r of Soc. Sec.*, No. 6:08-CV-1575-ORL-DAB, 2009 WL 2913538, at *6 (M.D. Fla. Sept. 10, 2009) for the proposition when an ALJ – through no fault of

---

[3] At the hearing, Plaintiff's counsel did question the vocational expert as to "quota-type pressure" of the bench assembly work, avoiding fluorescent lighting, being off-task twenty percent of the time, and the sit/stand option.  (Tr. at 79-82).  The vocational expert testified that for bench-type work, the majority of the workday would be seated, but a stand option would be offered as long as the individual stayed at the work station and was on task.  (Tr. at 82).

his own – relies on a vocational expert's testimony that conflicts with the DOT, the Court cannot determine how important this factor was in the ALJ's determination.  In *Adkins*, the plaintiff claimed that the testimony of the vocational expert conflicted with the descriptions in the DOT. *Id.* at 5.  The court held that even though the vocational expert testified that he *believed* his testimony to be consistent with the DOT, that belief was misplaced and, thus, the ALJ was misinformed and erred in relying on the VE's testimony.  *Id.* (emphasis added).  The court remanded the case for additional development of the vocational record.  *Id.* at *7.  However, the unpublished opinions of the Eleventh Circuit cited, *supra*, lead to a different conclusion.  These Eleventh Circuit unpublished opinions hold that when a possible conflict exists between a vocational expert's testimony and the DOT that is not apparent, and an ALJ relies on a vocational expert's testimony, if after inquiry, the vocational expert testifies that no conflict exists between his or her testimony and the definitions in the DOT, then an ALJ may rely on the vocational expert's testimony.  *See Jones, Miller*, 246 F. App'x at 662; *Hurtado*, 425 F. App'x at 796; and *Leigh*, 496 F. App'x at 975.

In this case, the vocational expert testified that he relied on the DOT to determine available jobs responsive to the hypothetical.  At the hearing, Plaintiff did not object or present evidence controverting the vocational expert's testimony.  The ALJ relied on the statements by the vocational expert to determine that Plaintiff was able to perform the jobs listed by the vocational expert.  Plaintiff failed to show that there was an apparent conflict that would require the ALJ to investigate further.  Absent an apparent conflict, the ALJ met his duty to inquire of the vocational expert as to whether a conflict existed and, when the vocational expert testified that his opinion was based on the DOT, the ALJ had no further duty to investigate any conflict

with the DOT.  The Court finds that the ALJ did not err in relying on the vocational expert's

opinion and, thus, the ALJ's decision is supported by substantial evidence.

### D.  Noncompliance and Credibility

Plaintiff argues that the ALJ erred in finding Plaintiff not entirely credible for not always

seeking the type of treatment expected of someone who suffers from her alleged conditions.

Plaintiff claims that she was often unable to afford the medications and treatments prescribed to

her.  The Commissioner maintains that the ALJ properly considered Plaintiff's compliance as

one of several factors in his credibility finding and that the ALJ considered the Plaintiff's ability

to afford the prescribed medications in considering her compliance.

The Eleventh Circuit has held that "'refusal to follow prescribed medical treatment

without a good reason will preclude a finding of disability,'" but "'poverty excuses

noncompliance.'"  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (quoting *Dawkins

v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)).  If a plaintiff fails to comply with prescribed

treatment, then the ability to afford medication is a factor that should be considered in the

administrative process.  SSR 16-3P, 2016 WL 1119029, at *9 (Mar. 16, 2016).[4]  When an ALJ

relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of

disability benefits," and the record contains evidence that a plaintiff was unable to afford the

prescribed medical treatment, then the ALJ must determine whether a plaintiff could afford the

prescribed medical treatment.  *Ellison*, 355 F.3d at 1275.  If a court determines that the failure to

follow prescribed medical treatment is not one of the "principal factors in the ALJ's decision,"

then the ALJ is not required to delve into a plaintiff's ability to pay, and this failure is not

reversible error.  *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011).  If the

---

[4] SSR 16-3P supersedes SSR 96-7P.  *See* SSR 16-3P, 2016 WL 1119029, at *1 (Mar. 16, 2016)

failure to follow prescribed medical treatment is a substantial factor in an administrative law judge's decision to discredit a plaintiff's credibility, then the ALJ should inquire further as to whether a plaintiff was able to afford the prescribed medical treatment before holding noncompliance against a plaintiff. *Moffatt v. Comm'r of Soc. Sec.*, No. 8:13-CV-2853-T-36EAJ, 2015 WL 1038014, at *4 (M.D. Fla. Mar. 10, 2015).

Plaintiff argues that the ALJ created a negative inference regarding Plaintiff's disability determination because of her inability to maintain medical treatment.  In the decision, the ALJ found Plaintiff to have a history of poor compliance with medications.  (Tr. at 24).  The ALJ noted Plaintiff was repeatedly advised to be medically compliant and warned of the effects of noncompliance.  (Tr. at 24).  The ALJ maintained that Plaintiff was offered assistance with medications and continued to smoke and buy cigarettes while claiming she was unable to afford medications.  (Tr. at 24).  The ALJ cited to one physician who told Plaintiff of a location that provided one of her medications for free.  (Tr. at 24-25).

The ALJ also noted that Plaintiff failed to exercise, did not restrict her sodium intake, and did not check her home blood pressure, in addition to not taking the medications she claimed she could not afford.  (Tr. at 24).  The ALJ found all of these actions were against medical advice.  (Tr. at 24).  The ALJ also considered Plaintiff's activities of daily living in considering Plaintiff's credibility.  (Tr. at 25).  The ALJ found Plaintiff's activities, at times, were greater than what she generally reported.  (Tr. at 25).  The ALJ stated as an example that Plaintiff initially reported she does not cook, but at the hearing, she testified that she cooks and even sweeps.  (Tr. at 25).  The ALJ noted that Plaintiff gets coffee daily, prepares sandwiches daily, goes grocery shopping, joined a church, uses the city bus, can read and write, performs simple math functions, and watches movies with no issue.  (Tr. at 25).

The ALJ considered Plaintiff's claim that she could not afford her prescribed medications. (Tr. at 24-25). The ALJ determined that Plaintiff knew how to seek low-cost or free health care by visiting emergency rooms and low-cost clinics, and Plaintiff's doctors provided her with information on obtaining free medication. (Tr. at 24-25, 502, 593, 632). Further, Plaintiff's noncompliance with her medications was only one factor the ALJ considered in finding Plaintiff not entirely credible. A second factor the ALJ considered was Plaintiff's non-compliance with medical advice to exercise, restrict sodium and check her home blood pressures. All of these activities have no costs associated with them. Further, the ALJ considered Plaintiff's activities of daily living and how Plaintiff's initial reports and testimony conflicted, showing Plaintiff's ability to perform a greater number of activities of daily living than initially reported.

Here, the ALJ clearly articulated his reasons for not finding Plaintiff to be entirely credible. The ALJ considered Plaintiff's inability to afford medication and treatment as one factor in his credibility analysis, but not the sole or primary factor for denial of disability benefits in this case. The ALJ did not err when considering Plaintiff's noncompliance with medication and medical treatment when determining Plaintiff's credibility. The Court finds that the ALJ's decision as to Plaintiff's credibility is supported by substantial evidence.

## III.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 13, 2016.


_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties